UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRAVIS HUTCHINSON                                        CIVIL ACTION

VERSUS                                                   NO. 12-2300

ORLEANS PARISH PRISON ET AL.                             SECTION "B" (2)


# REPORT AND RECOMMENDATION

Plaintiff, Travis Hutchinson, is a prisoner currently incarcerated in the Tensas

Parish Detention Center in Waterproof, Louisiana. He filed this complaint pro se and in

forma pauperis pursuant to 42 U.S.C. § 1983 against the Orleans Parish Prison ("OPP")

and Orleans Parish Deputy Papina. Hutchinson alleges that while incarcerated in OPP

in April 2012, Deputy Papina failed to protect him from a stabbing attack by another

inmate and that he received inadequate medical care for the resulting injuries. He seeks

monetary compensation and injunctive relief in the form of transfer to "an upstate DOC

facility." Record Doc. No. 1 (Complaint at ¶¶ IV and V). His request for transfer is

moot because he has already received that.

On December 13, 2012, I conducted a telephone conference in this matter.

Participating were plaintiff pro se and Jason Wixom, counsel for defendants. Plaintiff

was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179

(5th Cir. 1985), and its progeny.

# THE RECORD

Plaintiff testified that he is currently incarcerated based upon his conviction on May 19, 2012, after having been arrested on February 11, 2012 on drug charges. He stated that he is currently serving a six-year prison sentence. Hutchinson confirmed that his claim in this case is based upon an incident that occurred on April 7, 2012, while he was incarcerated in OPP in connection with the drug charges.

Asked to described what happened on that night, Hutchinson said he was lying in his bunk inside his cell in a three-cell unit of the House of Detention ("HOD") facility at OPP. He said his cell door was open, when another OPP inmate, whom he knew only as "Chuckie," entered from the next cell at about 1:00 a.m. "and went to stabbing me up." Hutchinson testified that he ran out of his cell into the small area connecting the three cells "to the gate" to get away from his assailant.

Hutchinson testified that he did not know his attacker and that he personally had no previous problems or disagreements with his attacker. Hutchinson alleged vaguely and generally that there had been other problems in the HOD unit, including a rape "on another floor," in which he was not involved, and an atmosphere of "animosity," which he explained involved inmates "going around doing stuff for nothing on people." While he said he had no prior problems or disagreements with his attacker, either in jail or on the streets, before the subject stabbing incident, Hutchinson speculated that the attack "probably had to do with some uptown-downtown stuff, you never know," meaning

conflicts between inmates from different wards or neighborhoods. He confirmed, however, that the stabbing attack had occurred suddenly, without warning or particular reason to believe it was going to happen.

Hutchinson testified that after the initial attack, during which he was stabbed about five times, he ran away from his attacker out of the cell toward where the deputy on duty was standing at the locked gate. He said that the deputy could see that he was running away from the stabber, and he begged the deputy to open the gate so he could escape from his attacker, but the female deputy said she had called for "backup" and could not open the gate until other deputies arrived at the scene. Hutchinson identified this deputy as the defendant Deputy Papina, who "saw everything" after he exited the cell where the stabbing had occurred.

Plaintiff testified that the deputy said "she's not opening the door for me because she's scared for her life, she's waiting for backup to come," so he turned back around and faced his attacker because there was no place for him to run. He alleged that backup deputies arrived about five to seven minutes after the attack began. He said that when two backup deputies – one a woman and one a man – arrived at the scene, they opened the gate and "snatched me out" the cell.

Hutchinson said the deputies took him immediately to the medical department at the jail, and he was transported shortly thereafter to University Hospital for treatment of "deep" stab wounds, which were bleeding, so that he could be "stitched up." He said he

had been stabbed in the eyebrows, twice in the left shoulder and back and twice on the side of his face near his sideburns. He said he also had scratches and scrapes on his hands, back and arms, where he had tried to block and evade the stabber's attack.

Hutchinson confirmed that he had received and reviewed the medical records provided by defendants in response to my order, Record Doc. Nos. 5 and 16, and that they are accurate. He confirmed the reference in the medical records dated April 6 and 7, 2012, that in the hospital emergency room shortly after the attack, he received stitches in several places where he had deep cuts. He also confirmed that he was given Motrin and ibuprofen for pain, both at the hospital and upon his return to OPP, but he could not remember if he also was given naprosyn, all as reflected in the medical records. He testified that when he returned from the hospital to OPP, he was placed in the medical tier on a different floor from where he was previously confined, and he stayed in the medical unit for about two weeks, until HOD was "shut down"[1] and he was transferred to a state DOC facility on or about August 28, 2012. He said he received the medication for three or four days (although the medical records reflect that he was taking the medication throughout April 2012) and that his stitches were subsequently removed in stages on several occasions, until they were all removed within about two or three weeks

---

[1]The HOD unit of OPP was closed by the Orleans Parish Sheriff in 2012 in connection with consent decree negotiations between the United States Justice Department and the Sheriff concerning overall conditions of confinement at OPP, all of which is the subject of a lawsuit pending separately in this court. Jones et al. v. Gusman et al., C.A. No. 12-859 "I"(5).

of the stabbing incident. He alleged that the stitches were improperly removed, but the wounds ultimately healed, until he accidentally ran into a wall and reopened one of the wounds. He said he now has scars on his left arm, shoulder, and side of his face and near his eyebrow.

In summary, Hutchinson confirmed that he asserts two claims in the case; first, that Deputy Papina failed to protect him from attack by the other inmate; and, second, that he received inadequate medical care, specifically that he should have received stronger pain medication for his injuries than the Motrin and ibuprofen that he was provided and better removal of his stitches and followup care.

## ANALYSIS

### I. STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim. 28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as

long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended and expanded upon by his testimony at the <u>Spears</u> hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[2]

## II.    FAILURE TO PROTECT FROM HARM

While the stabbing incident described by Hutchinson is truly unfortunate, the question for this court is whether a violation of federal constitutional rights has been stated. Accepting as true for present purposes all of Hutchinson's written submissions and testimony, I must conclude that no violation of Hutchinson's constitutional rights by the defendants occurred in these unfortunate circumstances.

Hutchinson was a pretrial detainee on the date of the stabbing incident on which he bases this claim. In <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with

---

[1] The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1746 (2012) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

basic human needs, including . . . protection from harm, during their confinement." Id. at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Hutchinson in this case. Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650. Here, nothing more than episodic acts or omissions of jail officials, specifically Deputy Papina, have been alleged. For the following reasons, plaintiff fails to state a claim of violation of his constitutional rights cognizable under Section 1983 in the particular circumstances of this claim.

Prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare, 74 F.3d at 650. The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia,

428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  <u>Farmer</u>, 511 U.S. at 847.  An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  <u>Id.</u> at 834 (quotation omitted).

Further, plaintiff must establish that defendants possessed a culpable state of mind.  <u>Id.</u> (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u> at 837; <u>accord</u> <u>Newton</u>, 133 F.3d at 308.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."  <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . .  The "deliberate indifference" standard permits courts to separate omissions that

> "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291.

Of particular application to Hutchinson's case, the Fifth Circuit and other courts have consistently held that factual and legal claims like those asserted here fail to establish an actionable violation of a prisoner's constitutional rights. In <u>Longoria v. Texas</u>, 473 F.3d 586 (5th Cir. 2006), the Fifth Circuit reversed a decision by the lower court and ordered dismissal of a claim similar to Hutchinson's. The Fifth Circuit held that outnumbered, unarmed prison officials who were present during an inmate attack had no constitutional duty to endanger their own safety by intervening to protect an inmate stabbed in the incident. "[N]o rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence. The officers violated no 'clearly established' law by failing to intervene while unarmed." <u>Id.</u> at 594. In the same decision, the <u>Longoria</u> court reiterated its holding in <u>Johnson v. Johnson</u>, 385 F.3d 503 (5th Cir. 2004), that a response to an inmate's complaints about his safety that includes deferring the matter briefly for responsive action, as Deputy Papina did in immediately summoning backup officers in response to

-11-

the complaining inmate's specific request, "fulfills an official's protective duties under the Eighth Amendment." <u>Longoria</u>, 473 F.3d at 594 (citing <u>Johnson</u>, 385 F.3d at 526).

As Hutchinson himself testified, Deputy Papina immediately summoned other deputies in response to the stabbing and delayed in opening the gate to extract Hutchinson from the cell area only because she was "scared for her life [and] waiting for backup to come." In numerous decisions, the Fifth Circuit and other courts have held that a prison official, who reacts to an inmate melee in the manner Deputy Papina is alleged to have responded in Hutchinson's case, acts reasonably and commits no violation of constitutional rights for which an inmate may state a cognizable Section 1983 claim. <u>See</u> <u>Carrothers v. Kelly</u>, 312 Fed. Appx. 600 (5th Cir. 2009) (dismissal of inmate's suit affirmed where defendant prison guard, who was the only officer on the jail tier at the time of an inmate stabbing, radioed for help and left the tier to obtain assistance, and thereby did not act unreasonably); <u>Curbow v. Jackson</u>, 307 Fed. Appx. 828, 2009 WL 139590 (5th Cir. 2009) (dismissal as legally frivolous of suit by inmate stabbed and beaten by other inmates during a prison recreation yard riot affirmed, even though defendants were subjectively aware of some risk but acted reasonably in response to it); <u>Black v. Colunga</u>, 656 F. Supp. 625, 637-38 (E.D. Tex. 2009) (applying <u>Longoria</u> standard, inmate's Section 1983 complaint dismissed where defendant corrections officer reported inmate threat to ranking officers and did not intervene <u>alone</u> in inmate attack); <u>Verrette v. Major</u>, 2008 WL 4083032, *3-4 (W.D. La. 2008) (claim dismissed against

armed prison guards who did not intervene immediately in an inmate attack that happened quickly, when they acted with due concern for the security of themselves and the other inmates involved in the incident); Graves v. Webb, 2008 WL 1782635, *1 (S.D. Tex. 2008) (inmates' claim dismissed where guards left the scene of an inmate riot in a prison kitchen and returned five minutes later with a riot gun to restore order); Morris v. Ward, 2007 WL 951433, *1 (W.D. Mich. 2007) ("The Eighth Amendment does not require a prison guard to intervene in an armed assault by one inmate against another inmate when the intervention would place the guard in danger of physical harm.").

In this case, it cannot be concluded that Deputy Papina or any other prison official unconstitutionally exposed plaintiff to a substantial risk of serious harm.  No deliberate indifference in the constitutional sense occurred.  Neither prison officials nor Hutchinson himself had any reason to believe or even suspect that the inmate who allegedly attacked him posed a significant risk of danger to Hutchinson himself under these particular circumstances. There was no history known to defendants (or to Hutchinson himself] of prior incidents between Hutchinson and the other inmate.  The incident occurred suddenly and without warning. As Hutchinson testified, Deputy Papina had no reason to suspect that the inmate who attacked Hutchinson posed any known or anticipated threat to him before the assault, just as he himself had no reason to believe that the inmate posed any threat to him.

Deputy Papina and the two "backup" officers who responded to her summons acted reasonably in response to the stabbing incident. There is no allegation that Deputy Papina was armed or otherwise equipped to do anything other than what she did. It would have posed an unreasonable threat to her own safety and the general security of the three-cell area where the stabbing occurred for Deputy Papina to attempt <u>alone</u> to respond to the inmate's complaint or to intervene against an inmate armed with a stabbing weapon. Hutchinson's testimony, even accepted as true in its entirety, does not rise to the level of deliberate indifference by Deputy Papina or anyone else sufficient to establish a constitutional violation.

III.    <u>MEDICAL CARE</u>

Hutchinson was a pretrial detainee for part of the time and a convicted prisoner for the remainder of the five-month period from April to August 2012 about which he complains about his medical care at OPP. He asserts that he received inadequate medical care for the stab wounds he suffered in an altercation with another inmate.

As noted above, before the Fifth Circuit's decision in <u>Hare</u>, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of

reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel

v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as

recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

>    In Hare, however, the Fifth Circuit held:

>    (1) that the State owes the same duty under the Due Process Clause and the
>    Eighth Amendment to provide both pretrial detainees and convicted
>    inmates with basic human needs, including medical care and protection
>    from harm, during their confinement; and (2) that a state jail official's
>    liability for episodic acts or omissions cannot attach unless the official had
>    subjective knowledge of a substantial risk of serious harm to a pretrial
>    detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645. If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission, and the deliberate indifference standard enunciated in

Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas County, 591

F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51,

53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th

Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. <u>Estelle</u>, 429 U.S. at 105-06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976); <u>Tamez</u>, 589 F.3d at 770; <u>Hare</u>, 74 F.3d at 650. As discussed above, "deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994). The <u>Farmer</u> definition applies to Eighth Amendment medical claims. <u>Reeves</u>, 27 F.3d at 176.

As in the context of failure to protect from harm by another inmate, an inmate who alleges constitutionally inadequate medical care must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. <u>Davis</u>, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference

to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added). As noted above, "'deliberate indifference' is a stringent standard of fault." Southard, 114 F.3d at 551 (quoting Board of County Comm'rs, 520 U.S. at 410 (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. Once again, "'[s]ubjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue. <u>See</u> <u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Hutchinson must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Even assuming, however, without concluding, that plaintiff's stab wounds presented a serious medical need for constitutional purposes, Hutchinson has alleged facts, confirmed by his testimony and the verified medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP.

Hutchinson testified and the medical records confirm that he was promptly transported from OPP to a hospital emergency room, where his stab wounds were treated and stitched, and he received medication. His conditions were subsequently monitored and addressed by medication and suture removal by medical personnel after his return to OPP.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when second plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Hutchinson has expressed dissatisfaction with the overall quality and effectiveness of treatment, including specifically that he did not receive stronger pain medication and his stitches were improperly removed, none of his allegations rise to the

level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. The decisions made by the treating medical providers to render the care that they gave, including for example providing stronger pain medication or a particular suture removal technique, are classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Contentions like Hutchinson's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); Rowe v. Norris, 198 Fed. Appx. 579, 581 (8th Cir. 2006) (no constitutional violation when inmate

disagreed with physician's choice of medication); see also Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most, it is medical malpractice . . . ."); Corte v. Schaffer, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip."); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs. For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

VI.    IMPROPER DEFENDANT

Finally, I note that plaintiff has named OPP as a defendant in this matter. However, a prison or jail are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under Section 1983, as the statute and case law define that term. Cage v. Kent County Corr. Facility, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir. 1997); Johnson v. LCDC Med. Staff, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009); Holifield v. Mobile County Sheriff's Dep't, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008); Cullen v. DuPage County, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Corr. Facility Admin., No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); Sponsler v. Berks County Prison, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993). Thus, Hutchinson can assert no claim against OPP under Section 1983.

**RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ___29th___ day of January, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.